# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| CKC Systems, Inc. ) | ASBCA No. 61025 |
| ) | |
| Under Contract No. SPRPA1-12-C-W008 ) | |

APPEARANCE FOR THE APPELLANT:  Ms. Jenny Cheng
President

APPEARANCES FOR THE GOVERNMENT:  Daniel K. Poling, Esq.
DLA Chief Trial Attorney
Edward R. Murray, Esq.
Trial Attorney
DLA Aviation
Richmond, VA

Sharif T. Dawson, Esq.
Trial Attorney
Defense Supply Center
Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT

This appeal arises from a contracting officer's termination for default of Contract No. SPRPA1-12-C-W008 (the contract) for containers between CKC Systems, Inc. (appellant or CKC) and the Defense Logistics Agency (the government or DLA). CKC alleges that it should be allowed to continue the contract because it completed the first article test and can complete the contract. The government argues that CKC failed to deliver the containers on time and does not have an excusable delay. The parties have elected to waive a hearing and submit the case upon the record pursuant to Board Rule 11. We deny the appeal.

## FINDINGS OF FACT

1. On April 4, 2012, DLA awarded the contract to CKC. The contract required CKC to produce 26 containers, National Stock Number (NSN) 6KH 8145-01-274-3467, at a unit price of $12,614.38 each for a total of $327,973.88 as contract line item number (CLIN) 0001AA. (R4, tab 1 at 1-2)

2. The contract required a not separately priced first article test as CLIN 0001AB (R4, tab 1 at 2).

3. Delivery of the first article was due within 180 days of contract award. Early delivery was authorized. (R4, tab1 at 2)

4. The contract incorporated Solicitation No. SRPA1-11-R-W223, CKC's proposal, and the contract award (R4, tab 1 at 1, block 18).

5. The contract included drawing no. 600E001 (R4, tab 1 at 3). The solicitation also included drawing no. 600E001 (R4, tab 6 at 7).

6. Four shock mounts were required as part of the container and listed as part 21 on drawing no. 600E001. The drawings annotated that the shock mounts were part number C635-1A and the manufacturer was Dow Elco. (R4, tab 22 at 3)

7. The drawings instructed:

> Each shock mount shall be marked with its manufacturing cure date[1] (month and year) permanently molded in the top of the mount material so as to be plainly visible when the mount is installed. If mount configuration makes this impossible, the cure date shall be stamped on the top surface of the flexing element using white waterproof ink conforming to A-A-208. *Shock mounts shall be no older than one (1) year old when installed in the container.*

(R4, tab 22 at 3 n.12) (emphasis added)

8. The drawings directed where CKC was to place the shock mounts by indicating the placement of part 21 (R4, tab 22 at 7).

9. The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984), which states:

> (a)(1) The Government may, subject to paragraphs (c) and (d) below, by written notice of default to the

---

[1] Cure Date – Curing is the heat-induced process whereby the long chains of the rubber molecules become cross-linked by a vulcanizing agent to form three dimensional elastic structures. The Cure Date is the date that the rubber is fully molded in this process. (https://www.colonialseal.com/downloads /press-releases/TAEIastomerCureDates.pdf)

Contractor, terminate this contract in whole or in part if the Contractor fails to:

> (i) Deliver the supplies or to perform the services within the time specified in this contract or any extension;

> (ii) Make progress, so as to endanger performance of this contract (but see subparagraph (a)(2) below); or

> (iii) Perform any of the other provisions of this contract (but see subparagraph (a)(2) below).

> (2) The Government's right to terminate this contract under subdivisions (1)(ii) and (1)(iii) above, may be exercised if the Contractor does not cure such failure within 10 days (or more if authorized in writing by the Contracting Officer) after receipt of the notice from the Contracting Officer specifying the failure.

(R4, tab 1 at 14)

10. From February 21, 2013, through February 25, 2013, the government conducted testing on the containers (R4, tab 10 at 2).

11. On September 25, 2013, the government performed additional form and fit tests (R4, tab 10 at 2).

12. In December 2013, the government issued the first article test report, concluding, "Based on the test results, the container has met all the requirements with the exception of Item Inspection and some issues found during the Fit Check" (R4, tab 10 at 2). The issues included the restraint block being "rather tight" and that an installation tool "was not painted a lusterless red" as the contract required (R4, tab 10 at 16). Neither of these inspection results impacted the shock mounts.

13. On January 13, 2014, the contracting officer (CO) issued unilateral Modification No. P00001 (R4, tab 2 at 1). This modification directed changes for CLINs 0001 and 0001AA. For CLIN 0001AA, the modification changed the delivery date from December 19, 2013, to May 14, 2015. (R4, tab 2 at 3)

14. On June 10, 2015, the CO issued unilateral Modification No. P00002, referencing a CKC email, dated June 5, 2015. This modification extended the delivery date for CLIN 0001AA until December 15, 2015, in exchange for a reduction in price of $499.98. (R4, tab 3 at 1-4) The administrative record does not contain the email

3

but because of the reduction in price included in the modification, we find that this delivery date was at CKC's request.

15. On December 3, 2015, the CO issued a cure notice to CKC. The CO outlined the contract and modifications that had taken place to that point. The CO also stated that progress payments in the amount of $100,151.00 had been disbursed under the contract. The CO notified CKC as follows:

> [T]he government considers the firm's repeated requests to extend the delivery due date of this contract, in addition to the fact that it is now delinquent on several other contracts, a condition which is endangering the performance of this contract. Therefore, unless this condition is cured within 10 days after receipt of this notice, the Government may terminate for default under the terms and conditions of the Federal Acquisition Regulation 52,249-8, entitled "Default", clause of this contract.

(R4, tab 11) The CO required a response by December 14, 2015.

16. On December 14, 2015, CKC responded. CKC stated that the "[g]overnment took an extended approximately 12 months to approve the [first article] due to various reasons." CKC requested an extension until September 29, 2016, and explained that it was delayed due to "[c]ontingencies that were out of our control" and the fact that the container was the "biggest in size" CKC had contracted to build which made it the "most challenging unit" that it had to build. CKC stated that the contract could be completed, assuming no other unforeseen contingency occurred, "around June 29, 2016 (optimum schedule)." (R4, tab 12)

17. On December 21, 2015, the CO sent a response to CKC concerning various show cause and cure notices. Regarding the contract at issue in this appeal, the CO wrote:

> In your response to the CURE Notice dated December 3, 2015, CKC requested a final extended revised delivery date of 29 September 2016 for the 26 units on this contract. Per the teleconference on December 16, 2015 between DLA, DCMA, and CKC, as well as CKC's response to the teleconference in the email dated December 18, 2015, it has been determined that the Government will accept your final revised delivery date of 29 September 2016 for your consideration of 1% of the contract value ($3,302.00).

4

> Modification No. P00003 has been issued with a new
> contract value of $324,171.88.

(R4, tab 13 at 3)

18. On December 22, 2015, the CO issued Modification No. P00003, extending the delivery date for CLIN 0001AA to September 29, 2016 and reducing the unit price from $12,595.15 per unit to $12,468.15 per unit for a total contract price reduction from $327,473.90 to $324,171.90 (R4, tab 4 at 2-3).

19. On January 26, 2016, the contract specialist notified the Defense Contract Management Agency (DCMA) technical advisor to take note of the dates on shock mounts while visiting CKC's facility because DLA had issues with a vendor who was using old shock mounts the prior year (R4, tab 24).

20. On February 10, 2016, the DCMA technical advisor directed CKC, "[u]pon installation of any shock mounts-Notify [Quality Assurance Representative] to verify and document date" (R4, tab 25).

21. On February 12, 2016, the United States Navy (the Navy) technical advisor denied a request to waive the requirement that shock mounts could be installed that were older than one year after the cure date because it "shortens the containers service life and speeds up the replacement cycle." The Navy technical advisor expected to get ten years of use out of the shock mounts before they needed to be replaced. (R4, tab 26)

22. On February 24, 2016, the DCMA technical advisor sent the contract specialist an email informing him that on February 10, 2016, he found 88 shock mounts that were over a year old. The email further stated that on February 22, 2016, the DCMA technical advisor found 30 containers with out of date shock mounts installed and informed CKC that it should be ready to discuss the issue. (R4, tab 27)

23. On February 25, 2016, the DCMA technical advisor sent an email to his team, informing them that he notified CKC at the February 10, 2016 conference call that "no waivers would be approved by buying command to extend more than 30 days." He also informed the team that "CKC should not be using shock mounts dated Oct/Nov 2014 manufacture dates." (R4, tab 29)

24. On July 19, 2016, the DCMA technical advisor sent the contract specialist an email, notifying him that he inspected the shock mounts on hand for this contract (requiring 104 shock mounts) and another contract (requiring 32 shock mounts). From his observations, CKC only had 42 shock mounts that were less than 1 year old. (R4,

5

tab 30) Hence, CKC only had 42 shock mounts that were in compliance with the contract.

25. On July 21, 2016, the contract specialist sent CKC an email outlining problems on several contracts. Regarding the contract at issue in this appeal, the contract specialist informed CKC of the numbers of shock mounts and their cure dates. The contract specialist stated, "It is my understanding that none of these shock mounts have been installed to date with the exception of the [first article test] unit. DLA made CKC aware months ago that no waivers would be approved for out of date shock mounts." The contract specialist asked for an account of how CKC planned to complete the contract on time. (R4, tab 31)

26. On August 4, 2016, CKC asked for a waiver, allowing installation of shock mounts that contained cure dates up to 26 months prior to installation for 86 shock mounts and 29 months for 4 shock mounts (R4, tab 32).

27. On August 17, 2016, the contract specialist informed CKC that the waiver request was disapproved (R4, tab 34).

28. Also on August 17, 2016, the contract specialist sent CKC a spreadsheet that outlined the status of CKC's various projects with DLA (R4, tab 35 at 1). Regarding the contract subject to this appeal, the notes stated that the shock mount waiver was disapproved, that the lead time for new mounts was 10 weeks, and that "CKC to provide new delivery schedule with consideration by [close of business] 8/19/2015" (R4, tab 35 at 2). The date August 19, 2015 appears to be an administrative error that was supposed to be 2016.

29. On August 22, 2016, CKC responded, "[u]pon news of waiver disapproval, my team and I now have to reevaluate the situation and will respond at a later time" (R4, tab 36).

30. On September 21, 2016, in a status email, CKC informed the contract specialist, "[w]e are still discussing the Delivery schedule" (R4, tab 39).

31. Also on September 21, 2016, the contract specialist informed CKC that a no-cost cancellation would be considered if CKC returned the $100,151.00 it received as progress payments (R4, tab 14).

32. On October 3, 2016, the CO sent CKC a show cause letter. The CO outlined the various modifications that extended the delivery date on the contract. The

CO then stated:

> Since you have failed to perform on contract number
> SPRPA1-12-C-W008 within the time required by its terms,
> the Government is considering terminating the contract
> under the provisions for default of this contract. Pending a
> final decision in this matter, it will be necessary to
> determine whether your failure to perform arose from
> causes beyond your control and without fault or negligence
> on your part.

The CO wrote that CKC could present any facts bearing on the delay to the contract specialist within 10 days of receiving the letter. The CO warned CKC that failure to respond may be considered an admission that no excuses exist. The CO notified CKC that the response was due on October 13, 2016. (R4, tab 15)

33. On October 13, 2016, CKC responded to the show cause letter. CKC stated, "[d]ue to the challenging size and weight of this particular container, CKC has had to overcome several unforeseen issues during welding/production. In addition, the delay of previously completed contracts has contributed to the negative impact to subject contract's schedule." The response continued, "CKC has decided to abide to DLA's decision that we replace our current in-house shock mounts (single source control part purchased from Dow Elco, Inc.) by purchasing a new set with current cure dates for subject contract units." CKC stated that Dow Elco, Inc.'s delivery will impact when CKC could deliver. CKC stated that it regretted not completing the contract by September 29, 2016 but that it could complete the contract as soon as it received the new shock mounts. (R4, tab 16)

34. On October 31, 2016, the CO notified CKC with a letter that the contract was terminated for default. The CO stated this was his final decision and included appeal rights in the letter. (R4, tab 17)

35. On November 9, 2016, the CO issued Modification No. P00004, terminating the contract for default and deobligating all funds. The modification included appeal rights. (R4, tab 5)

36. On January 26, 2017, CKC appealed the termination for default and the appeal was docketed as ASBCA No. 61025.

37. During discovery, CKC provided the government with documentation concerning when it requested a new quote from Dow Elco, Inc. for compliant shock mounts. CKC requested the new quote on October 31, 2016, a full month after the last

7

mutually agreed-upon delivery date and the same day that the government notified CKC that the contract was terminated for default. (R4, tab 42 at 10)

## DECISION

The legal standards for a termination for default are well established. Under the default clause, here FAR 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984), the government may terminate for default by written notice if the contractor fails, without excuse, to: deliver supplies within the time specified or any extension; make progress, as to endanger performance of the contract; or perform any other provisions of the contract. For the latter two categories, the government may exercise its right to terminate if the contractor does not cure the failure within 10 days after receiving notice from the contracting officer that specifies the failure.

Termination for default "is a drastic sanction which should be imposed (or sustained) only for good grounds and on solid evidence." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987) (quoting *J.D. Hedin Constr. Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969) (further citations omitted)). While CKC appealed the contracting officer's decision, "a termination for default is essentially a government claim." *Thunderstruck Signs*, ASBCA No. 61027, 17-1 BCA ¶ 36,835 at 179,504. Thus, the government maintains the burden of proving that a termination for default was justified, by a preponderance of the evidence. *Id.* (citing *DayDanyon Corp.*, ASBCA No. 57681, 15-1 BCA ¶ 36,073 at 176,151; *Keystone Capital Services*, ASBCA No. 56565, 09-1 BCA ¶ 34,130 at 168,753 (citing *Lisbon Contractors*, 828 F.2d at 765)). Should the government establish its prima facie case to justify the termination, "the burden shifts to the contractor to prove the default was excusable." *Truckla Services Inc.*, ASBCA Nos. 57564, 57552, 17-1 BCA ¶ 36,638 at 178,445 (citing *ADT Constr. Grp., Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,312).

Here, the government established a prima facie case to justify the termination for default. After at least one modification extending CKC's contract at CKC's request (finding 14), the final agreed upon delivery date was September 29, 2016 (finding 18). Even with significant communication and notice that the shock mounts needed to be in compliance with the contract (findings 20-25, 28-31), CKC failed to deliver the containers by September 29, 2016. Further, even though the delivery date had passed and the government could have terminated for default based on the failed delivery, the government allowed CKC an opportunity to respond to a show cause letter and explain any excuses (finding 32). However, instead of providing any excuses, CKC simply admitted that it was late and that it would have to wait for new shock mounts to arrive in order to deliver the containers (finding 33). CKC did not offer any indication of when it would deliver the parts or indicate when the parts might have been ordered. Thus, CKC failed to deliver the containers on time and the government established its prima facie case to justify the termination.

8

The burden then shifts to CKC to demonstrate that it is entitled to an excusable delay.[2] CKC admitted that it was required to use shock mounts that were installed within 12 months of the manufacturer's cure date (app. br. ¶ 6). To explain its delay in the project, CKC repeatedly states that this project was challenging due to the size and weight of the containers (app. br. ¶ 5; finding 33). CKC also explained that "the delivery schedule was revised several times" which then caused the shock mounts to be too old (app. br. ¶ 8). However, the government changed the delivery dates based on when CKC said it could deliver the containers (findings 14, 16, 18). Indeed, before agreement with the final delivery date, CKC stated it could complete the contract "around June 29, 2016 (self-described optimum schedule)" (finding 16). However, the government used the later date of September 29, 2016, that CKC requested (finding 18).

Even in the conclusion of its initial brief, CKC failed to raise any excusable delays. Instead, CKC stated that it spent money completing the first article test and that "CKC is capable and intended to complete delivery of this contract with re-purchasing the new mounts from the sole designated source Dow-Elco." CKC stated that because Dow Elco is the sole approved source, it is beyond CKC's control to complete the contract. (App. br. ¶ 3) However, the age of the shock mounts was always limited by the contract to not be more than 1 year old when installed (findings 6-7). The government stressed this to CKC repeatedly throughout performance of the contract (findings 7, 20, 23, 25, 28). Even after being notified that CKC's requested waiver for the shock mounts was disapproved, CKC failed to attempt to purchase compliant shock mounts until after the delivery date had passed (finding 37). Thus, CKC failed to demonstrate that the delay was excusable.

---

[2] To establish that CKC is entitled to excusable delay, it must demonstrate that the delay resulted from a cause which was unforeseeable, beyond the control of the contractor, and without fault or negligence by the contractor. *Sauer Inc. v. Danzig*, 224 F.3d 1340, 1345 (Fed. Cir. 2000).

## CONCLUSION

The appeal is denied.

Dated: June 20, 2019

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61025, Appeal of CKC Systems, Inc., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

10